## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

TAMI FRATIS, Individually and on Behalf of All
Others Similarly Situated,

                         Plaintiff,

      vs.

PHH CORPORATION, JAMES O. EGAN,
JANE D. CARLIN, JAMES C. NEUHAUSER,
CHARLES P. PIZZI, KEVIN STEIN,
CARROLL R. WETZEL, JR., and ROBERT B.
CROWL,

                      Defendants.

**Civil Action: 1:18-cv-9674**

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF SECTIONS
14(a) AND 20(a) OF THE
SECURITIES EXCHANGE ACT
OF 1934 JURY TRIAL DEMANDED**

Plaintiff Tami Fratis ("Plaintiff"), by her undersigned attorneys, alleges upon personal knowledge with respect to herself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff, on behalf of herself and the other public holders of the common stock of PHH Corporation ("PHH" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and together with PHH, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger ("Proposed Merger") between PHH and Ocwen Financial Corporation ("Ocwen").

2.      On February 27, 2018, the Board caused the Company to enter into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Company shareholders will receive $11.00 per share in cash for each share of Company common stock they own (the "Merger Consideration"), a deal valued at $360 million.

3.      On April 6, 2018, in order to convince PHH shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading PREM 14A Preliminary Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The materially incomplete and misleading Proxy violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      Though Defendants have extolled the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning the financial projections for the Company that were prepared by the Company and relied upon by the Board in recommending that Company shareholders vote in favor of the Proposed Merger.  The financial projections were also utilized by PHH's financial advisor, Credit Suisse Securities (USA) LLC ("Credit Suisse"), in conducting the valuation analyses in support of its fairness opinion that the consideration to be received by PHH via the Proposed Merger was fair from a financial point of view to the Company.  Proxy 42.  Further, the Proxy omits material information regarding the Company's confidentiality agreements it reached with 38 strategic parties during the sales process.  Proxy 32.

6.      It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the shareholder vote in order to allow the Company's shareholders to make an informed decision regarding the Proposed Merger.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of: (i) Regulation G (17 C.F.R. § 244.100); and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to PHH shareholders sufficiently in advance of the vote

on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because PHH in headquartered in this District.

## PARTIES AND OTHER ENTITIES

11.     Plaintiff is a citizen of Montgomery County, Pennsylvania.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of PHH common  stock.

12.     Defendant PHH is a Maryland corporation, maintains its principal executive offices at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054. PHH's common stock is traded on the NYSE under the ticker symbol "PHH."

13.     ***Defendant Janes D. Carlin*** ("Carlin") serves as an independent director of PHH.

14.     ***Defendant Robert B. Crowl*** ("Crowl") has serves as director, President, and Chief Executive Officer ("CEO") of  PHH.

3

15.    **Defendant James O. Egan** ("Egan") serves as an independent director and non- executive Chairman of the Board of PHH.

16.    **Defendant James C. Neuhauser** ("Neuhauser") serves as an independent director of PHH.

17.    **Defendant Charles P. Pizzi** ("Pizzi") serves as an independent director of PHH.

18.    **Defendant Kevin Stein** ("Stein") serves as an independent director of PHH.

19.    **Defendant Carroll R. Wetzel, Jr.** ("Wetzel") serves as an independent director of PHH.

20.    The defendants identified in paragraphs 13 through 18 are collectively referred to herein as the "Individual Defendants."

21.    Non-party Parent is a Florida corporation and a party to the Merger Agreement.

22.    Non-party Merger Sub is a Maryland corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

23.    In accordance with Local Rule 10.1, Plaintiff provides the following information regarding the named parties: (i) Plaintiff is a shareholder of PHH common stock who can be reached at Tami Fratis, c/o Gainey McKenna & Egleston, 440 Park Avenue South, 5th Floor, New York, NY 10016; (ii) Defendant PHH Corporation maintains its principal executive offices at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054; (iii) Individual Defendant James O. Egan's address is c/o PHH Corporation at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054; (iv) Individual Defendant Jane D. Carlin's address is c/o PHH Corporation at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054; (v) Individual Defendant James C. Neuhauser's address is c/o PHH Corporation at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054; (vi) Individual Defendant Charles P. Pizzi's address is c/o PHH Corporation at 3000 Leadenhall Road, Mt. Laurel, New

Jersey 08054; (vii) Individual Defendant Kevin Stein's address is c/o PHH Corporation at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054; (viii) Individual Defendant Carroll R. Wetzel, Jr.'s address is c/o PHH Corporation at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054; and (ix) Individual Defendant Robert B. Crowl's address is c/o PHH Corporation at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public shareholders of PHH (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

25.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of April 3, 2018, there were approximately 32,557,494 shares of PHH common stock outstanding.  The actual number of public shareholders of PHH will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

5

   ii)  whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

   iii)  whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

   iv)  whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

  c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

  d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

  e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

  f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

  g.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

26.    PHH, through its subsidiary PHH Mortgage, is one of the largest sub-servicers of residential mortgages in the United States.

27.    PHH Mortgage provides servicing and portfolio retention solutions to investors of mortgage servicing rights, financial and wealth management institutions, regional and community banks, and credit unions.

28.    Headquartered in Mount Laurel, New Jersey, the Company has been providing mortgage lending and servicing solutions since 1984.

29.    On February 27, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with Ocwen.

30.    Pursuant to the terms of the Merger Agreement, stockholders of PHH will receive $11.00 in cash for each share of PHH they own.

31.    According to the February 27, 2018 press release announcing the Proposed Transaction:

> PHH Corporation (NYSE: PHH) ("PHH" or the "Company") today announced that it has entered into a definitive agreement in which Ocwen Financial Corporation (NYSE: OCN) ("Ocwen") will acquire all of the Company's outstanding shares of common stock in an all cash transaction valued at $360 million, or $11.00 per fully-diluted share, representing a premium of 24% over the closing price of PHH's common stock of $8.84 on February 26, 2018. As part of the transaction, Ocwen will assume $119 million of PHH's outstanding unsecured debt . . . .

> Subject to the satisfaction of various closing conditions, including regulatory and shareholder approvals, the transaction is targeted to close in the third or fourth quarter of 2018. The agreement may be terminated by Ocwen if, among other things, the Company's unrestricted cash or net worth decline below certain threshold amounts. Following closing, shares of PHH common stock will no longer be listed on the New York Stock Exchange.

*The Proposed Transaction Undervalues PHH*

32.    PHH is a sub-servicer of residential mortgages in the United States and provides outsourced mortgage banking services to a range of clients, including financial institutions and real estate brokers through the Company's two segments – Mortgage Production and Mortgage Servicing.  The Company was incorporated in 1953 with principal offices in Mount Laurel, New Jersey.

33.    The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth.  To illustrate, the Merger Consideration represents a 30% *discount* to the Company's 52-week high of $15.00 per share, and one analyst, Keefe, Bruyette & Woods, has a $12.00 price target on the stock.

34.    More specifically, the Company's most recent financial performance press release before the announcement of the Proposed Transaction showed an increase in net revenue year over-year from $72 million to $109 million.  The Company also recently reported potential excess cash of $635 million, which includes $301 million of share repurchases that was completed in 2017.

35.    Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by cutting off their ability to benefit from the Company's continued growth.

36.    Despite the inadequate Merger Consideration, the Board has agreed to the Proposed Transaction.  It is therefore imperative that PHH's stockholders are provided with the material information that has been omitted from the Proxy, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

*The Materially Incomplete and Misleading Proxy*

37.    On April 6, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

***The Materiality of Financial Projections***

38.    A company's financial projections are material information a board relies upon to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the financial projections were relied upon to approve the Merger Agreement and recommend the Proposed Merger to Company shareholders.  The Proxy discloses that the financial projections were prepared by the Company's management and provided to the Board "to assist our board of directors in evaluating a possible transaction."  Proxy 44.

39.    When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions. In regards to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K. *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

40.    Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are

presented in an appropriate format." 17 C.F.R. § 229.10(b). Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items." *Id.*

41. The Proxy fails to provide material information concerning the financial projections, which were developed by the PHH management and relied upon by the Board in recommending shareholder approval of the Proposed Transaction.

42. Specifically, the Proxy provides values for (1) EBIT, (2) Net Income, and (3) Adjusted Net Income, but fails to provide: (i) the definitions for these measures, line items used to calculate these metrics, or (ii) a reconciliation of these metrics. Proxy at 45. The Proxy states that "Net Income" is derived "[f]ollowing adjustment for interest expense, one-time expenses and income tax benefit/expenses," which would suggest that "Net Income" is a non-GAAP measure, and also states that Adjusted Net Income is derived "[f]ollowing adjustment for loss in contract adjustment (gross)", but does not disclose the values for any of these line items, or reconciliation of any of the three metrics to their most comparable GAAP equivalent measures. Proxy at 46.

43. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

44.     Thus, to cure the Proxy the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy not misleading.

45.     In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

46.     The Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Credit Suisse.

47.     With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) unlevered free cash flow and the line items used to calculate unlevered free cash flow; (ii) the line items used to calculate EBIT; (iii) the line items used to calculate net income; (iv) the line items used to calculate adjusted net income; and (v) a reconciliation of all non-GAAP to GAAP metrics.

48.     With respect to Credit Suisse's *Dividend Discount Analysis*, the Proxy Statement fails to disclose: (i) projected dividends through year 2026; (ii) the inputs and assumptions

underlying the discount rates applied by Credit Suisse; (iii) PHH's excess cash; and (iv) the terminal values for PHH.

49.    With respect to Credit Suisse's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose Credit Suisse's basis for only using Nationstar Mortgage Holdings, Inc. and Ocwen Financial Corporation as comparable companies.

50.    The Proxy Statement fails to disclose any liquidation analysis performed by Credit Suisse.

51.    The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

52.    The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background to the Merger; (ii) Reasons for Recommending the Merger; (iii) Recommendation of our Board of Directors; (iv) Unaudited Financial Projections; and (v) Opinion of the Company's Financial Advisor.

53.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**The Financial Projections Violate Regulation G**

54.    The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures and adopted Regulation G to ensure that investors and others are not misled by the use of non- GAAP financial measures." More specifically, the company must disclose the most directly comparable GAAP financial measure and a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."

55.    Moreover, the SEC has publicly stated that the use of non-GAAP financial Compliance with Regulation G is **mandatory** under Section 14(a), and noncompliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

### *The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9*

56.    In addition to the Proxy's violation of Regulation G, the lack of reconciliation, or at the very least the line items utilized in calculating the non-GAAP measures renders the financial projections disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures.

57.    Such information is necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, Defendants acknowledge the misleading nature of non-GAAP

projections, as PHH shareholders are cautioned in the Company's 3Q 2017 earnings release: "[T]here are inherent limitations to these measures and they should not be viewed as a substitute for our results in accordance with GAAP as measurements of the Company's financial performance."[1]

58.     As such, in order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 44-46, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

**The Materially Misleading Financial Analyses that Violate SEC Rule 14a-9**

59.     The financial projections at issue were relied upon by the Company's financial advisor, Credit Suisse, in connection with its valuation analyses and fairness opinion.  Proxy 46-51.  The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently. Once a proxy statement discloses internal projections relied upon by the board, those projections must be complete and accurate.

60.     With respect to Credit Suisse's *Dividend Discount Analysis*, the Proxy states that Credit Suisse performed an analysis of the Company's consolidated operations to calculate the estimated present value of dividends that would be payable in fiscal years ending December 31, 2018 through December 31, 2026. Proxy 49-50.  However, despite disclosing that Credit Suisse based its calculation upon "financial forecasts and estimates prepared by the management of PHH," the Proxy never discloses: (i) which information from the forecasts was relied upon; (ii) the forecasted values for the dividends; nor (iii) their estimated present value. Proxy 50.

---

[1]     PHH Corporation, Current Report (Form 8-K), Exhibit 99.1 (Nov. 7, 2017).

61.     Because the information from the forecasts used in Credit Suisse's calculation and the present and future values for the dividends were not disclosed, shareholders are unable to discern the veracity of the *Dividend Discount Analysis*. Without further disclosure, shareholders are unable to compare Credit Suisse's calculations with the Company's financial forecasts. Thus, the Company's shareholders are being materially misled regarding the value of the Company.

**Information Regarding the Financial Analyses Is Materially Misleading**

62.     The financial projections were also relied upon by Credit Suisse to perform its valuation an analyses and to issue its fairness opinion. However, the omissions of information regarding the projections render the analyses materially incomplete and misleading.

63.     With respect to the *Dividend Discount Analysis*, the Proxy states that Credit Suisse performed an analysis of the Company's consolidated operations to calculate the estimated present value of dividends that would be payable in fiscal years ending December 31, 2018 through December 31, 2026. Proxy at 50. However, despite disclosing that Credit Suisse based its calculation upon "financial forecasts and estimates prepared by the management of PHH," the Proxy fails to disclose: (i) what information from the forecasts was relied upon; (ii) the forecasted values for the dividends; nor (iii) their estimated present value. Proxy at 50.

64.     Therefore, shareholders are unable to discern the veracity of the *Dividend Discount Analysis*, and unable to compare Credit Suisse's calculations with the Company's financial forecasts.

**Material Omissions with Regard to Nondisclosure Agreements**

65.     The Proxy states that the 38 potential buyers of the Company executed confidentiality agreements and received confidential information of the Company. Proxy at 31. The Proxy further provided that these confidentiality agreements contained customary standstill

provisions that would fall away in whole or in part upon the Company's announcement of the Proposed Transaction. However, the Proxy failed to disclosure whether any of the agreements contained "don't ask, don't waive" provisions. Such information is material to PHH shareholders, as they would find it material to know whether or not other potentially interested parties were foreclosed from submitting superior bids.

66. Absent disclosure of the foregoing material information prior to the special shareholder meeting, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

***Material Omissions with Regard to Confidentiality Agreements During the Sales Process***

67. Moreover, the Proxy states that the Company entered into confidentiality agreements with 38 of the 57 parties with whom the Company was engaged in strategic discussions prior to its eventual agreement with Ocwen. Despite mentioning that the Company entered into confidentiality agreements with the parties, the Proxy is silent on the terms of these agreements— specifically, if the agreements contained any standstills or "don't ask, don't waive" provisions ("DADWs") that were in place. Such information is material to PHH shareholders, as a reasonable shareholder would find it material to know whether or not other parties that expressed interest in acquiring the Company were foreclosed from submitting superior proposals. The omission of this information renders the references to the confidentiality agreements in the Proxy incomplete and therefore misleading.

68. In sum, the Proxy independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders

certain statements, discussed above, materially incomplete and misleading. As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from PHH shareholders.

69.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

72.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, amongst other things: the financial projections that were prepared by the

Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

73.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

74.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

75.     Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

76.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder)**

77.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

78.    SEC Rule 14a-9 prohibits the solicitation of shareholder votes in Proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.  Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

79.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

80.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

81.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

82.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

83.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a Proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

84.    PHH is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

85.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

**COUNT III**

**Claim for Violation of Section 20(a) of the 1934 Act**
**<u>Against the Individual Defendants</u>**

86.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

87.     The Individual Defendants acted as controlling persons of PHH within the Meaning of Section 20(a) of the 1934 Act as alleged herein.

88.     By virtue of their positions as officers and/or directors of PHH and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

89.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

90.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

91.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

92.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling

21

persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and her counsel as Class Counsel;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

D.    Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

E.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.    Granting such other and further relief as this Court may deem just and proper.

Dated: May 24, 2018

**GAINEY McKENNA & EGLESTON**


By: */s/ Barry J. Gainey*
        Barry J. Gainey (BG7560)
        95 Route 17 South, Suite 310
        Paramus, NJ 07652
        Telephone: (201) 225-9001
        Facsimile: (201) 225-9002
        Email: bgainey@gme-law.com

-and-

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF

I, _Tami Fratis custodian for Simon_ ("Plaintiff") hereby retain the Gainey McKenna & Egleston and such co-counsel it deems appropriate to associate with, subject to their investigation, to pursue my claims on a contingent fee basis and for counsel to advance the costs of the case, with no attorneys fee owing except as may be awarded by the court at the conclusion of the matter and paid out of any recovery obtained and I also hereby declare the following as to the claims asserted under the law that:

Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff's transactions in **PHH Corporation (NYSE: PHH)** securities that are the subject of this action during the Class Period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 15 | PHH | | 12/1998 | 22 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Please list other transactions on a separate sheet of paper, if necessary.**

Plaintiff has sought to serve as a class representative in the following cases within the last three years: NONE.

Plaintiff will not accept any payment serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _15_ day of _May_, 2017

_Tami Fratis_
Signature